UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

VICTOR PUIG, individually
and on behalf of all others
similarly situated,

      Plaintiff,

v.                    Case No:  2:23-cv-856-JES-NPM

SAZERAC COMPANY, INC.,

      Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on Sazerac Company, Inc.'s Motion to Dismiss First Amended Class Action Complaint (Doc. #26) and the Supplement (Doc. #27) to that motion. Victor Puig filed a Memorandum in Opposition (Doc. #28) on April 25, 2024. With permission of the Court, Sazerac Company, Inc. filed a Reply (Doc. #31) on May 15, 2024.

For the reasons set forth below, the motion is granted in part and denied in part. Leave is granted for plaintiff to file a second amended complaint.

**I.**

This case centers around the following two products that Sazerac Company, Inc. (Sazerac or Defendant) produces and sells:

 

(Doc. #25, ¶¶ 22, 38.) The product depicted on the left is a cinnamon whisky beverage with an alcohol volume of thirty-three percent (33%) ("whisky beverage") sold in Florida liquor stores. The product depicted on the right is a cinnamon malt beverage with an alcohol volume of sixteen and a half percent (16.5%) ("malt beverage") sold in Florida grocery stores, gas stations, conveniences stores, and other similar locations.

The First Amended Complaint (FAC) alleges that Victor Puig (Puig or Plaintiff) prefers alcoholic beverages "based on distilled spirits to those based on brewing and fermentation, malt beverages, due to reasons including superior quality, and/or taste." (Doc. #25, ¶ 70.) Plaintiff asserts that he is familiar with "the Fireball brand of Cinnamon Whisky" (id. at ¶ 71), which Sazerac began to also sell in miniature bottles. (Id. at ¶ 6.)

"Plaintiff saw the Fireball Cinnamon at stores such as grocery stores, big box stores, bodegas, gas stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, ethnic food stores, gas station convenience stores, and other similar locations."  (Id. at ¶ 72.)  Plaintiff "figured" there would be no purpose for Sazerac to sell anything other than the whisky beverage in a small bottle and bought a bottle of the malt beverage expecting it to be whisky.  (Id. at ¶¶ 73, 74, 77, 78-81.)  Despite his preference for distilled spirits, Plaintiff continued to buy this malt beverage product multiple times between 2022 and October 8, 2023.  (Id. at ¶ 82.)  Plaintiff asserts that he either would not have paid as much for the malt beverage, or would hot have bought it at all, absent Sazerac's allegedly "false and misleading statements and omissions" about the product he was buying.  (Id. at ¶¶ 84-85.)

The FAC asserts two claims against Sazerac. Count I alleges that Sazerac violated Florida's Deceptive and Unfair Trade Practices Act (FDUTPA) by making false and deceptive representations and omissions with respect to the malt beverage[1]

---

[1] The FAC seemingly contains scrivener errors that muddle which product Puig alleges is the subject of the misrepresentations and omissions. For example, the FAC at one point alleges the whisky beverage is false and misleading (id. at ¶ 107) but it seems clear from the overall content of the FAC that the intent is to charge that the malt beverage is the misleading product, not the whisky

and the presence of whisky in the malt beverage.  (Id. at ¶ 107.) This caused Plaintiff to believe the malt beverage product was whisky or at least contained whisky in more than a negligible amount (id. at ¶ 118), and to pay a premium price for the malt beverage product. (Id. at ¶ 121.)  The FAC also alleges in Count II that Sazerac's conduct violated Florida's False and Misleading Advertising statute, Fla. Stat. § 817.41.

Sazerac moves to dismiss the FAC with prejudice or, in the alternative, to stay the case. Sazerac argues the FDUTPA claim is precluded by its safe harbor provision, is not plead with sufficient particularity, and is not plausible. Sazerac argues that Count II should be dismissed for failure to plead with sufficient particularity. Alternatively, in a footnote, Sazerac seeks to stay or dismiss the case pursuant to the "first-filed" rule. Puig responds that there are no valid grounds to dismiss or stay the case.

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a

---

beverage.  Any future amended complaints shall clarify Puig's position.

formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

When evaluating a Rule 12(b)(6) motion, the court may consider exhibits attached to the complaint. Turner v. Williams, 65 F.4th 564, 583 n.27 (11th Cir. 2023). "[W]hen the exhibits contradict the general and conclusory allegations of the [complaint], the exhibits govern." Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1206 (11th Cir. 2007). "[A] litigant may be defeated by his own evidence, the pleader by his own exhibits when he has pleaded too much and has refuted his own allegations by setting forth the evidence relied on to sustain them." Turner, 65 F.4th at 583 n.27 (quotation marks and citation omitted).

If a heightened pleading standard applies, Rule 9(b) requires "identifying the who, what, when, where, and how of the fraud alleged." Omnipol, A.S. v. Multinational Def. Servs., LLC, 32 F.4th 1298, 1307 (11th Cir. 2022)(citing Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1237 (11th Cir. 2008)). More specifically, the complaint must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." Ambrosia Coal & Const. Co. v. Pages Morales, 482 F.3d 1309, 1316-17 (11th Cir. 2007) (citing Brooks v. Blue Cross & Blue Shield of Florida, Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

### III.

**A. FDUTPA Claim**

The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Fla. Stat. § 501.204(1). "To bring a FDUTPA claim for damages, a plaintiff must establish three elements: 1) a deceptive act or unfair practice; 2) causation; and 3) actual damages." Stuart Roofing, Inc. v. Thomas, 372 So. 3d 298, 300 (Fla. 4th DCA 2023), quoting Stewart Agency, Inc. v. Arrigo Enters., Inc., 266 So. 3d 207, 212 (Fla. 4th DCA 2019). See also Tershakovec v. Ford Motor Co., Inc., 79 F.4th 1299, 1311 (11th Cir. 2023)(citing Carriuolo v. General Motors Co., 823 F.3d 977, 983 (11th Cir. 2016)).

**(1)  FDUTPA's Safe Harbor Provision**

Sazerac asserts that the FDUTPA claim must be dismissed because the FDUTPA contains a "safe harbor" provision which precludes the claim in this case.  The Court concludes that the safe harbor provision precludes much, but not all, of the FDUTPA claim in Count I.

A portion of the FDUTPA's safe harbor provisions provides that the FDUTPA "does not apply to (1) [a]n act or practice required or specifically permitted by federal or state law." Fla. Stat. § 501.212(1).  "Florida courts have treated this so-called 'safe harbor' as prohibiting a plaintiff from using FDUTPA to

create new obligations, or to broaden existing obligations, when a defendant's conduct is already in compliance with federal law or regulations." Young v. Cmty. Health Sys., Inc., No. 22-14255, 2023 WL 6121795, at *3 (11th Cir. Sept. 19, 2023)(per curiam).[2] "Thus, an act specifically permitted by federal law cannot serve as the basis for a FDUTPA claim." Marrache v. Bacardi U.S.A., Inc., 17 F.4th 1084, 1099 (11th Cir. 2021). "The purpose of the statute is obvious: it would be unacceptably inconsistent for one statute to penalize conduct mandated [or specifically permitted] elsewhere." Ezcurra v. Monsanto Co., No. 9:20-CV-80524, 2020 WL 5491428, at *4 (S.D. Fla. Aug. 7, 2020)(alteration in original)(quoting State, Office of the Att'y Gen. v. Commerce Comm. Leasing, LLC, 946 So. 2d 1253, 1258 (Fla. 1st DCA 2007)). The movant bears the burden of "demonstrat[ing] that a specific federal or state law affirmatively authorized it to engage in the conduct alleged in the Complaint[]." State of Fla., Off. of Atty. Gen., Dep't of Legal Affs. v. Tenet Healthcare Corp., 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005). Dismissal of the claim is appropriate where this safe harbor provision applies. Montero v. Duval Cnty. Sch. Bd., 153 So. 3d 407, 412 (Fla. 1st DCA 2014).

---

[2] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." Bonilla v. Baker Concrete Const., Inc., 487 F.3d 1340, 1345 n.7 (11th Cir. 2007).

### (a)   Certificate of Label Approval (COLA)

Sazerac argues that this safe harbor provision bars the FDUTPA claim because the malt beverage has received Certificates of Label Approval (COLA) from the Treasury Department's Tobacco Tax and Trade Bureau (TTB). (Doc. # 26, p. 5.) Sazerac submits a Declaration of Mary Tortorice (Doc. #27-1) to establish the existence of the COLA. The TTB is charged with creating and enforcing federal regulations on alcoholic beverages in order to prevent consumer deception. See 27 U.S.C. §§ 201-219a ("Federal Alcohol Administration Act" or the "FAAA").[3]

As a general rule, "when considering a motion to dismiss, the district court must limit its consideration to the pleadings and any exhibits attached to it." Baker v. City of Madison, Alabama, 67 F.4th 1268, 1276 (11th Cir. 2023). A district court may consider documents incorporated into the complaint by reference and matters of which a court may take judicial notice. Baker, 67 F.4th at 1276 (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)). But Sazerac does not advance, nor is the Court aware of, any basis upon which the Court can consider the COLA (which has not been submitted to the Court) or the Declaration of

---

[3] See In re Anheuser-Busch Beer Labeling Marketing and Sales Practices Litigation, 644 F.App'x. 515, 518-20 (6th Cir. 2016) for the history of the FAAA in connection with labelling.

Mary Tortorice. Therefore, this portion of the Sazerac's motion is unpersuasive.

### (b)   Federal Regulations

Independent of the COLA, Sazerac argues that the FAC itself establishes that FDUTPA's safe harbor provision applies. Sazerac asserts that a comparison of the alleged misconduct and the regulations in the FAC establish, contrary to Plaintiff's arguments, that the safe harbor provision bars the claim because each alleged misconduct is specifically permitted or mandated by the regulations.

### (i)   Regulations Cited by Sazerac

Sazerac cites three regulations which it asserts specifically permit the conduct alleged in the FAC: 27 C.F.R. § 7.21(a), 27 C.F.R. § 7.122(a), and 27 C.F.R. § 7.122(b)(1). (Doc. #26 at p. 3.) Puig responds that these regulations do not specifically permit the conduct alleged in the FAC, and therefore do not establish a safe harbor. (Doc. #28, pp. 25-26.) Puig is correct. These regulations do not establish that the components of the labels challenged in this case are permitted or mandated by federal law.

The first regulation states that "a brewer or wholesaler bottling malt beverages must obtain a certificate of label approval (COLA) covering the malt beverages from TTB prior to bottling the malt beverages or removing the malt beverages from the premises

where they were bottled." 27 C.F.R. § 7.21(a). The other two cited regulations read as follows:

> a) General prohibition. Malt beverage labels, containers, or packaging may not contain any statement or representation, irrespective of falsity, that is misleading to consumers as to the age, origin, identity, or other characteristics of the malt beverage, or with regard to any other material factor.
>
> (b) Ways in which statements or representations may be found to be misleading.
>
>> (1) A statement or representation is prohibited, irrespective of falsity, if it directly creates a misleading impression or if it does so indirectly through ambiguity, omission, inference, or by the addition of irrelevant, scientific, or technical matter. For example, an otherwise truthful statement may be misleading because of the omission of material information, the disclosure of which is necessary to prevent the statement from being misleading.

27 C.F.R. § 7.122(a)-(b)(1).

These regulations only establish that Sazerac was required to obtain COLAs from TTB, not that it did so. The record which the Court is allowed to consider does not contain any COLA. Additionally, the cited regulations do not speak on whether the alleged conduct in the FAC—i.e, the brand name, statement of composition, alcohol content, etc.,—is required or specifically permitted. As to these regulations, Sazerac's argument is unpersuasive.

### (ii) Other Regulations Cited In FAC

But other regulations do mandate or specifically permit misconduct alleged in the FAC. The FAC first broadly alleges that the malt beverage "was labelled and packaged" contrary to the FAAA's requirement which makes it unlawful to package and label any distilled spirits or malt beverages in a manner which misleads consumers, irrespective of falsity, with respect to their identity or quality. (Doc. #25, ¶ 29.) The FAC then sets forth six reasons why the labelling of the malt beverage is misleading, citing and quoting specific regulations. (Id. at ¶¶ 33, 37, 39, 40, 43, 50.) The Court discusses each in turn.

- **Brand Name and Brand Name Qualification**

The FAC first asserts that while malt beverage is required to have a brand name, the "Fireball" brand name is misleading under 27 C.F.R. § 7.63(a)(1) and 7.64(b) because it is synonymous with cinnamon whiskey, a distilled spirit and not a malt. (Id. at ¶¶ 33-36.) The FAC's third reason is that the "Fireball" brand name on the malt beverage is not qualified with the word "brand" or some other qualification which could mitigate any misleading impression which might be created. (Id. at ¶ 39.)

The regulations do indeed mandate that "[t]he malt beverage label must include a brand name," 27 C.F.R. § 7.64(a); see also 27 C.F.R. § 7.63(a)(1), and the label only needs to "be qualified with the word 'brand' or with some other qualification if the

appropriate TTB officer determines that the qualification dispels any misleading impression that might otherwise be created." 27 C.F.R. § 7.64(b).  The FAC does not allege that an appropriate TTB officer determined that the qualification was needed to dispel any misleading impression that might otherwise be created. Since inclusion of the brand name was mandated and the inclusion of a qualification was not triggered, Puig cannot base his FDUTPA claim on the presence of the word "Fireball" without qualification.

- **Similarities Between Malt Beverage and Whisky Beverage Bottles**

The FAC's second reason is that the "Fireball" brand name on the malt beverage label is misleading because the packaging and labeling of malt beverages "features the identical colors, themes, fonts, graphics, and other matter, such as the" logo, red cap, and charred label edges as the whisky beverage. (Doc. #25 at ¶¶ 37-38)(citing 27 C.F.R. § 7.63(a)(1); 27 C.F.R. § 7.64(b)). As just explained, the brand name is required by federal regulations so it enjoys safe harbor. But Puig can advance his assertion that similarities between the malt beverage and the cinnamon whisky beverage bottles mislead.

In this regard, the Court agrees with Puig's cited case that analyzed the same bottles under the same regulations. See McKay v. Sazerac Co., Inc., No. 23-CV-00522-EMC, 2023 WL 3549515 (N.D. Cal.

May 17, 2023).[4] The plaintiff there similarly asserted that it was the matching "appearance that creates confusion between the whisky and malt bottles." Id. at *4. That court concluded that because "there is no evidence that the TTB regulations address any sort of comparative analysis with other labels, or test for consumer confusion," California's safe harbor did not apply. Id. The same conclusion must be reached here. Sazerac does not point to, and the Court is not aware of, any regulations that mandate or specifically permit similar bottles to contain dissimilar beverages, as alleged here. To the contrary, the regulations suggest their purview is limited to the product submitted for approval and not other products. See 27 C.F.R. § 7.121(a)(stating that "[t]he labeling practices that are prohibited if misleading set forth in this subpart apply to any malt beverage label, container, or packaging," 27 C.F.R. § 7.121(a), but "does not include shipping cartons or cases that are not intended to accompany the container to the consumer.").[5] Puig can argue that

---

[4]  McVay is pertinent and persuasive only as to this overlapping argument it shares with Puig since "[p]laintiff's claims [there] are predicated on a comparative analysis of the two products in question" but "do not turn" on Sazerac's other arguments here like "disclos[ure of] added flavoring as required by § 7.147." McKay, at *4.

[5]  Section 7.121(a)(1)-(3) defines "label", "container", and "packaging".

bottle similarities between the two different beverages is misleading but not that the brand name is misleading.

- **Alcohol Content**

The FAC's fourth reason is that while the malt beverage must state its alcohol content, the label is misleading because the alcohol content is obscurely located on the back of the bottle in fine print and in a pencil-thin, non-contrasting font which is hard to read under normal conditions. (Doc. #25, at ¶¶ 40-42)(citing 27 C.F.R. § 7.63(a)(3); 27 C.F.R. § 7.52(a); 27 C.F.R. § 7.52(c)).

Alcohol content is indeed mandated information. 27 C.F.R. § 7.63(a)(3). Therefore, it is subject to specific formatting, language, and location requirements. See 27 C.F.R. § 7.52-55 (requiring certain type size, color, capitalization, spacing, and language for mandatory information). Therefore, Puig cannot argue the malt beverage's alcohol content is illegible because it is on the back of the container in small red font over a black background. (See Doc. #25, ¶¶ 40-42.) Puig's argument would "create new obligations, or to broaden existing obligations, when a defendant's conduct is already in compliance with federal law or regulations." Young, 2023 WL 6121795, at *3.

- **Statement of Composition**

The FAC's fifth reason is that the malt beverage's statement of composition—"Malt Beverage with Natural Whisky & Other Flavors

and Caramel Color"—is misleading because it is in the smallest allowable size, among other things. (Doc. #25 at ¶¶ 43-46)(citing 27 C.F.R. § 7.63(a)(2); 27 C.F.R. § 7.141(b)(2); 27 C.F.R. § 7.128(a); 27 C.F.R. § 7.235(a)(8); 27 C.F.R. § 7.147(b)(2)(i)).

Because each part of the sentence is either mandated or specifically permitted by the regulations, the statement of composition enjoys safe harbor. In this case, the statement of composition is mandatory information. 27 C.F.R. § 7.147(a); 27 C.F.R. § 7.63(a)(2). The regulations mandate the drink be described as a "malt beverage." 27 C.F.R. § 7.147(b)(1)("The statement of composition must clearly identify the base class and/or type designation of the malt beverage product (e.g., 'beer,' 'lager beer,' 'lager,' 'ale,' 'porter,' 'stout,' or 'malt beverage')"). It also specifically permits the use of the word "with." 27 C.F.R. § 7.147(b)(2)(i)("If the flavoring material is added after fermentation, the statement of composition must describe that process, using terms such as 'added,' 'with,' 'infused,' or 'flavored' . . . ."). The phrase "Natural Whisky & Other Flavors" is also specifically permitted. 27 C.F.R. § 7.147(b)(2)(ii)("If two or more flavoring materials are used in the production of the malt beverage . . . the characterizing flavoring material may be specifically identified and the remaining flavoring materials may be generally referenced (such as 'kiwi and other natural and artificial flavor(s)') . . . ."). So too is "Caramel Color." 27

16

C.F.R. § 7.147(b)(3) ("The coloring materials may be identified specifically (such as 'caramel color,' 'FD & C Red #40,' 'annatto,' etc.) . . . ."). And finally, "[a]ll parts . . . must appear together" 27 C.F.R. § 7.141(b)(2) and abide by the same formatting and location requirements as all other mandatory information. 27 C.F.R. § 7.52-54. Therefore, Puig cannot successfully argue the statement itself or its formatting makes the malt beverage label misleading.

- **Display Cases**

The FAC's sixth and final reason is that display cases at retailers selling the malt beverage describe it as "shots" and often sell it with mini "shot" cups, furthering the misleading impression it is whisky. (Id. at ¶ 50.) For the same reasons Puig can argue similarities between the malt beverage and the whisky beverage bottles misleads, he can argue the malt beverage is misleading because it is sold at retailers describing the drink as "shots" alongside mini shot cups. See supra Section III.A.1.b.ii, "Similarities Between Malt Beverage and Whisky Beverage Bottles". Sazerac again points to no authority, and the Court is not aware of any, that mandates or specifically permits display cases at retailers to describe the malt beverage as "shots" and to sell the beverage alongside mini "shot" cups, as alleged here.

**(2)  Failure to State a Claim**

As previously stated, to establish a consumer claim for damages under the FDUTPA, Plaintiff must show a deceptive act or unfair practice. Tershakovec, 79 F.4th at 1299. Sazerac argues FAC fails to adequately plead this element for three reasons: (a) the heightened pleading standard of Rule 9(b) applies and has not been satisfied (Doc. #26, pp. 13-14); (b) "no reasonable Florida consumer encountering Fireball Cinnamon at a gas station, convenience store, or supermarket would understand the product to be whisky" (id. at p. 7); and (c) Puig's reliance on federal labeling regulations do not create a viable claim. (Id. at pp. 14-15.) Each argument will be addressed in turn as to the remaining viable portions of the FDUTPA claim.

**(a)  Puig's FDUTPA Claim Satisfies Rule 9(b)'s Heightened Pleading Standard**

As this Court recently stated:

> Courts are divided as to whether a FDUTPA claim must adhere to the heightened pleading standard of Rule 9(b), and there is no clear direction from the Florida Supreme Court or the Eleventh Circuit. See Eli Lilly & Co. v. Tyco Integrated Sec., LLC, No. 13-80371-CIV, 2015 WL 11251732, at *2, 2015 U.S. Dist. LEXIS 191652 (S.D. Fla. Feb. 10, 2015) (collecting cases and providing overview of the opposing arguments). It seems to the undersigned that Rule 9(b)'s more stringent pleading requirements do not apply to all FDUTPA claims, only to those that sound in fraud.

Smith v. REV Grp., Inc., No. 2:22-CV-742-JES-NPM, 2023 WL 1861414, at *4 (M.D. Fla. Feb. 9, 2023). The FAC consistently refers to

misrepresentations and falsehoods.  (Doc. #25 at ¶¶ 43, 52, 85, 107, 110, 121.)  The Court finds that Puig's assertions that Sazerac misleads consumers by producing the malt and whisky beverages in nearly identical bottles, describing the drink as "shots" at retailers, and selling it at retailers alongside mini shot cups sound in fraud. Therefore, Puig must comply with Rule 9(b)'s heightened pleading standard as to its FDUTPA claim.

The Court further finds that the FAC is sufficiently pled. It identifies the precise misrepresentations allegedly made: the labelling of the malt beverage in a bottle "with identical colors, themes, fonts, graphics, and other matter, such as the Fireball Dragon logo, the iconic red cap, and 'charred' label edges" as the whisky beverage and selling it alongside "mini 'shot' cups" while describing it as "shots". (Doc. #25, ¶¶ 50, 109.) The FAC identifies the "Defendant[]" as the one causing the alleged misrepresentations and omissions, (id. at ¶ 121), and specifies the Defendant is "Sazerac Company, Inc. . . . a New Orleans corporation with a principal place of business in Kentucky." (Id. at ¶ 68.) The times and places were identified as "between 2022 and October 8, 2023 . . . at grocery stores, big box stores, bodegas, gas stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, ethnic food stores, gas station convenience stores, and other similar locations . . . ." (Id. at ¶ 82.) The FAC asserts the alleged misrepresentations

made "Plaintiff believe[] the Product was Fireball Cinnamon Whisky and contained whisky, in more than a negligible amount," (id. at ¶ 118), which Sazerac benefited from because it charged a "price premium for the Product . . . ." (Id. at ¶ 121.) This fulfills 9(b)'s purpose of "alerting defendant[] to the precise misconduct with which [it is] charged and protecting defendant[] against spurious charges of immoral and fraudulent behavior." United States ex rel. 84Partners, LLC v. Nuflo, Inc., 79 F.4th 1353, 1360 (11th Cir. 2023)(quoting United States ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1310 (11th Cir. 2002)). This portion of Sazerac's motion is denied.

      **(b)   Whether the Alleged Conduct Constitutes a FDUTPA Violation**

Sazerac argues that "dismissal of Plaintiff's FDUTPA claim is appropriate because no reasonable Florida consumer encountering Fireball Cinnamon at a gas station, convenience store, or supermarket would understand the product to be whisky." (Doc. #26, p. 7.)

A practice is deceptive under FDUTPA when "there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." Zlotnick v. Premier Sales Grp., Inc., 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting PNR, Inc. v. Beacon Prop. Mgmt., Inc., 842 So. 2d 773, 777 (Fla. 2003)).  See also Harrison

v. Lee Auto Holdings, Inc., 295 So. 3d 857, 862 (Fla. 1st DCA 2020).  To satisfy this element, plaintiff must show that "the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances." Carriuolo v. General Motors, 823 F.3d 977, 983-84 (11th Cir. 2016) (quoting State, Office of the Att'y Gen. v. Commerce Comm. Leasing, LLC, 946 So.2d 1253, 1258 (Fla. 1st DCA 2007)). "Under Florida law, an objective test is employed in determining whether the practice was likely to deceive a consumer acting reasonably." Id.

Generally, under FDUTPA, "[w]hether particular conduct constitutes . . . an unfair or deceptive trade practice is a question of fact." Prates v. Westgates Resorts, Ltd, No. 616CV217ORL41TBS, 2016 WL 11774203, at *3 (M.D. Fla. Aug. 4, 2016)(quoting Siever v. BWGaskets, Inc., 669 F. Supp. 2d 1286, 1293 (M.D. Fla. 2009)). Although Sazerac argues "[t]he label cannot be misleading when it identifies and describes the product accurately," (Doc. #26, p. 7), this statement is not quite accurate.  "If the statements are 'likely to mislead reasonable consumers,' then it makes no difference if the statements are 'technically or literally true.'" Coleman v. CubeSmart, 328 F. Supp. 3d 1349, 1361 (S.D. Fla. 2018)(quoting F.T.C. v. Peoples Credit First, LLC, 244 F. App'x 942, 944 (11th Cir. 2007)). Because the FAC contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," see Iqbal,

556 U.S. at 678(internal quotation marks and citation omitted), this portion of Sazerac's motion is denied.

### (c) Puig's Cited Regulations Do Not Create a Viable FDUTPA Claim

Lastly, Sazerac argues that Puig's cited regulations do not create a viable FDUTPA claim. (See Doc. #26, pp. 14-15.) The Court agrees.

One of the ways a plaintiff can establish a FDUTPA claim is by plausibly alleging a *per se* FDUTPA violation. "*Per se* violations of FDUTPA stem from the transgression of '[a]ny law, statue, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.'" Feheley v. LAI Games Sales, Inc., No. 08-23060-CIV, 2009 WL 2474061, at *4 (S.D. Fla. Aug. 11, 2009)(quoting Fla. Stat. § 501.203(3)(c)).

Various federal label regulations are quoted throughout the FAC, implying that Sazerac's malt beverage label violated these regulations. (See Doc. #25, ¶¶ 33, 37, 39-44.) The FAC asserts these "regulations prohibit consumer deception by companies in the labeling of alcoholic beverages" (id. at ¶ 116) and compiles them into a list:

```
27 C.F.R. § 7.52(a)
27 C.F.R. § 7.52(c)
27 C.F.R. § 7.63(a)(1)
27 C.F.R. § 7.63(a)(2)
27 C.F.R. § 7.63(a)(3)
27 C.F.R. § 7.64(b)
```

```
27 C.F.R. § 7.128(a)
27 C.F.R. § 7.141(b)(2)
27 C.F.R. § 7.147(b)(2)(i)
27 C.F.R. § 7.235(a)(8)
```

(Id. at ¶ 117.) These are the same regulations cited, quoted, or otherwise addressed in this Court's FDUTPA safe harbor analysis. See supra Section III.A.1.b. To the extent Puig attempts to assert *per se* FDUTPA violations by quoting and citing these federal labeling regulations, such efforts fail. These regulations do not provide Puig with grounds to sue Sazerac under FDUTPA. To the contrary, these regulations are inapposite or limit Puig's ability to sue Sazerac, as explained in the Court's FDUTPA safe harbor analysis. See id.

### B. Puig's § 817.41 Claim is Sufficiently Pled

Florida's misleading advertising statute states that "[i]t shall be unlawful for any person to make or disseminate or cause to be made or disseminated before the general public . . . any misleading advertisement." Fla. Stat. § 817.41(1). To state a claim under § 817.41, a plaintiff must allege that: (1) the representor made a misrepresentation of a material fact; (2) the representor knew or should have known of the falsity of the statement; (3) the representor intended that the representation would induce another to rely and act on it; and (4) the plaintiff suffered injury in justifiable reliance on the representation. Westgate Resorts, Ltd. v. Reed Hein & Assocs., LLC, No. 618CV1088ORL31DCI, 2018 WL

5279156, at *8 (M.D. Fla. Oct. 24, 2018)(citing Third Party Verification, Inc. v. Signaturelink, Inc., 492 F. Supp. 2d 1314, 1322 (M.D. Fla. 2007)). "Because claims under § 817.41 are founded in common law fraud-in-the-inducement, Rule 9(b)'s heightened pleading standards govern." Volinsky v. Lenovo (United States) Inc., No. 8:23-CV-00250-KKM-NHA, 2024 WL 1299315, at *6 (M.D. Fla. Mar. 27, 2024)(citing Smith v. Mellon Bank, 957 F.2d 856, 858 (11th Cir. 1992)).

Though Sazerac argues otherwise, the first, second, and third elements are pled with sufficient particularity. The FAC asserts that: Sazerac misrepresented the malt beverage by packaging it in a bottle "with identical colors, themes, fonts, graphics, and other matter, such as the Fireball Dragon logo, the iconic red cap, and 'charred' label edges" as the whisky beverage, (Doc. #25, ¶ 123), which were "material in that they are likely to influence consumer purchasing decisions, since consumers buying alcoholic beverages in small bottles will expect them to be of higher potency, or "proof," alcohol by volume percentage . . . ." (Id. at ¶ 126.) The first element is pled with sufficient particularity.

The second and third elements—knowledge and intent—are also pled with sufficient particularity. The FAC asserts that Sazerac "knew its statements, representations, and omissions were false and/or misleading or designed to mislead consumers who were familiar with Fireball and expected to be buying Fireball Cinnamon

Whisky" and that Sazerac "intended for consumers to rely on its false statements, omissions, graphics, design elements and other indicia, for the purpose of selling the Product." (Id. at ¶¶ 127-28.) Sazerac argues these are mere assertions without requisite supporting facts. (Doc. #26, p. 17.) "It is true that Rule 9(b) requires particularity when pleading 'fraud or mistake,'" but it also "allow[s] '[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally.'" Iqbal, 556 U.S. at 686 (quoting Fed. R. Civ. P. 9(b)). "Under Rule 9(b)'s standards, these general allegations are sufficient." See U.S. ex rel. Matheny v. Medco Health Sols., Inc., 671 F.3d 1217, 1224 (11th Cir. 2012)(holding complaint there met the False Claims Act's knowledge requirement after it alleged parties knowingly did certain conduct).

### C. First-Filed Rule

Sazerac argues in a footnote that "[i]n the alternative, the Court should dismiss or stay th[is] action based on the 'first-filed' rule." (Doc. #26, p. 18, n. 10.) "The first-filed rule provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case." Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa., 713 F.3d 71, 78 (11th Cir. 2013)(citing Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu, 675 F.2d 1169, 1174 (11th Cir. 1982)). Sazerac's two-sentence first-filed

rule argument does not establish that there are actions previously filed in other federal courts that are competing or parallel to this litigation. This portion of Sazerac's motion is denied.

Accordingly, it is now

**ORDERED:**

Defendant's Motion to Dismiss for Failure to State a Claim (Doc. #26) is **GRANTED IN PART AND DENIED IN PART.** The First Amended Class Action Complaint is **dismissed without prejudice** to filing a second Amended Complaint within **FOURTEEN (14) DAYS** of this Opinion and Order. Any future amended complaint cannot advance a FDUTPA claim based on the malt beverage's brand name, statement of composition, alcohol content, or cited regulations herein. It shall also correct any scrivener errors.

**DONE AND ORDERED** at Fort Myers, Florida, this ___18th___ day of June, 2024.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Parties of record