UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

VICTOR PUIG, individually
and on behalf of all others
similarly situated,

      Plaintiff,

v.                  Case No: 2:23-cv-856-JES-NPM

SAZERAC COMPANY, INC.,

      Defendant.

_____

**OPINION AND ORDER**

This matter comes before the Court on review of Defendant's Motion to Dismiss (Doc. #37) filed on July 17, 2024.[1] Plaintiff filed a Response in Opposition (Doc. #38) on August 6, 2024. With permission from the Court, Defendant filed a Reply (Doc. #41) on August 27, 2024. For the reasons set forth below, the motion is denied.

---

[1] This is the second version of Defendant's motion to dismiss. (See Doc. #35.) This updated version corrected the previous version's header and service list. (See Doc. #37, p. 1 n. 1.) The first version, (Doc. #35), is therefore denied as moot.

**I.**

As the Court recently recounted:

> This case centers around the following two products that Sazerac Company, Inc. (Sazerac or Defendant) produces and sells:

 

> (Doc. #25, ¶¶ 22, 38.) The product depicted on the left is a cinnamon whisky beverage with an alcohol volume of thirty-three percent (33%) ("whisky beverage") sold in Florida liquor stores. The product depicted on the right is a cinnamon malt beverage with an alcohol volume of sixteen and a half percent (16.5%) ("malt beverage") sold in Florida grocery stores, gas stations, conveniences stores, and other similar locations.

(Doc. #32, p. 2.)

The Second Amended Complaint (SAC), the operative complaint, makes the following factual allegations: Victor Puig (Puig or Plaintiff) "prefer[s] alcoholic beverages based on distilled spirits to those based on brewing and fermentation" and is "familiar" with the whisky beverage. (Doc. #33, ¶¶ 85-86.) "P[uig] saw" the malt beverage at "gas stations, drug stores, convenience stores," and other similar locations (hereinafter 'non-liquor retailors'). (Id. at ¶ 93.) He "observed" the malt beverage's red,

yellow, and brown fonts and graphics. (Id. at ¶ 56, 96.) He then observed its "charred" label edges, twist-off grooved red cap, and the red dragon between the words "Red" and "Hot". (Id. at ¶¶ 57, 96.) He also observed the miniature bottle it came in. (Id. at ¶ 21, 96.) Puig "expected" and "figured" the malt beverage was the whisky beverage. (Id. at ¶¶ 91, 94.) So, "between 2022 and October 8, 2023," Puig bought the malt beverage. (Id. at ¶ 99.) "[H]e would not have bought [the malt beverage] or would have paid less" had he known it was not the whisky beverage. (Id. at ¶ 101.)

Sazerac has sold its whisky beverage at liquor stores since 1989. (Id. at ¶ 8.) But in 2020, seeking "to expand the number[] of locations in which it could sell its products," (id. at ¶ 14), Sazerac began to sell the malt beverage at 170,000 non-liquor retailers. (Id. at ¶ 23.) These retailers describe the malt beverage as a "Fireball Cinnamon Shot" when selling it. (Id. at ¶ 61.) It is sold with "mini 'shot' cups" and from "standalone display racks" that read "Mini Mania", "specially designed 'buckets'" near registers of stores, and "locked . . . glass casing[s] . . . ." (Id. at ¶¶ 61-64.) Sazerac intentionally sells the malt beverage at these non-liquor locations and the whisky beverage at liquor locations so consumers are unable to compare the two beverages at the point-of-sale. (Id. at ¶ 59.)

The SAC's sole claim alleges that, because these acts and practices are false, unfair, and deceptive, Sazerac has violated

Florida's Deceptive and Unfair Trade Practices Act (FDUTPA). Sazerac moves to dismiss the SAC with prejudice on the grounds it fails to state a plausible FDUTPA claim because: (1) Puig's alleged preference and familiarity with the whisky beverage, along with the malt beverage's label disclosures, make clear he could not have thought he was purchasing the whisky beverage; (2) concluding that mini bottles are associated with distilled spirits is an unsupported conclusion; (3) Puig does not allege he personally saw the non-liquor retailers' misleading displays; and (4) social media posts cited by the SAC cannot be a basis for a FDUTPA claim. (Doc. #37.) Each argument will be addressed in turn.

**II.**

**A. Pleading Standard**

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me

accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," <u>Mamani v. Berzain</u>, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." <u>Chaparro v. Carnival Corp.</u>, 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Iqbal</u>, 556 U.S. at 679.

If a heightened pleading standard applies, Rule 9(b) requires "identifying the who, what, when, where, and how of the fraud alleged." <u>Omnipol, A.S. v. Multinational Def. Servs., LLC</u>, 32 F.4th 1298, 1307 (11th Cir. 2022)(citing <u>Mizzaro v. Home Depot, Inc.</u>, 544 F.3d 1230, 1237 (11th Cir. 2008)). More specifically, the complaint must allege: "(1) the precise statements, documents, or

misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." Ambrosia Coal & Const. Co. v. Pages Morales, 482 F.3d 1309, 1316-17 (11th Cir. 2007) (citing Brooks v. Blue Cross & Blue Shield of Florida, Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

**B. Erie Doctrine**

In a diversity case, the Court applies the substantive law of the forum state — in this case, Florida. See Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938). "Because we are interpreting Florida law, we look first for case precedent from Florida's highest court— the Florida Supreme Court." SE Prop. Holdings, LLC v. Welch, 65 F.4th 1335, 1342 (11th Cir. 2023) (citing Winn-Dixie Stores, Inc. v. Dolgencorp, LLC, 746 F.3d 1008, 1021 (11th Cir. 2014)). "Where that court has not spoken, however, we must predict how the highest court would decide this case." Id. (quoting Turner v. Wells, 879 F.3d 1254, 1262 (11th Cir. 2018)). "In making this prediction, 'we are bound to adhere to the decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise.'" Id. (cleaned up) (quoting Winn-Dixie, 746 F.3d at 1021).

**III.**

The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Fla. Stat. § 501.204(1). "To bring a FDUTPA claim for damages, a plaintiff must establish three elements: 1) a deceptive act or unfair practice; 2) causation; and 3) actual damages." Stuart Roofing, Inc. v. Thomas, 372 So. 3d 298, 300 (Fla. 4th DCA 2023)(quoting Stewart Agency, Inc. v. Arrigo Enters., Inc., 266 So. 3d 207, 212 (Fla. 4th DCA 2019)). See also Tershakovec v. Ford Motor Co., Inc., 79 F.4th 1299, 1311 (11th Cir. 2023)(citing Carriuolo v. General Motors Co., 823 F.3d 977, 983 (11th Cir. 2016)).

"An objective test is used to determine whether an act is deceptive under FDUTPA, and 'the plaintiff must show that the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances.'" Marrache v. Bacardi U.S.A., Inc., 17 F.4th 1084, 1098 (11th Cir. 2021)(quoting Carriuolo, 823 F.3d at 983-84 (cleaned up). "This standard requires a showing of 'probable, not possible, deception' that is 'likely to cause injury to a reasonable relying consumer.'" Zlotnick v. Premier Sales Grp., Inc., 480 F.3d 1281, 1284 (11th Cir. 2007)(quoting Millennium Commc'ns & Fulfillment, Inc. v. Office of the Att'y Gen., 761 So.2d 1256, 1263 (Fla. 3d DCA 2000)). "To establish an unfair practice, the plaintiff must show that it is 'one that offends established

public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" Marrache, 17 F.4th at 1098 (quoting PNR, Inc. v. Beacon Prop. Mgmt., Inc., 842 So. 2d 773, 777 (Fla. 2003))(cleaned up). "Since FDUTPA is the state counterpart to the Federal Trade Commission Act, in deciding whether an act or practice may be deemed deceptive, we must give due consideration and great weight to the interpretations made by the Federal Trade Commission and the federal courts." Millennium Commc'ns & Fulfillment, Inc. v. Off. of Att'y Gen., Dep't of Legal Affs., State of Fla., 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000).

The Court turns to Defendant's arguments and whether the factual allegations in the SAC state a plausible FDUTPA claim.

**A. Puig's preference and familiarity with the whisky beverage, along with the malt beverage's label disclosures, do not make his claim implausible**

As a sister court has persuasively said:

> "In determining whether a representation is likely to mislead consumers acting reasonably, courts consider the **net impression** created." F.T.C. v. RCA Credit Servs., LLC, 727 F.Supp.2d 1320, 1329 (M.D. Fla. 2010) (emphasis added). If the statements are "likely to mislead reasonable consumers," then it makes no difference if the statements are "technically or literally true." F.T.C. v. Peoples Credit First, LLC, 244 F. App'x 942, 944 (11th Cir. 2007). And how a reasonable consumer would interpret a term is an issue of fact. Jankus v. Edge Inv'rs, L.P., 650 F.Supp.2d 1248, 1258 (S.D. Fla. 2009).

Coleman v. CubeSmart, 328 F. Supp. 3d 1349, 1361 (S.D. Fla. 2018)(footnote omitted); see also Prates v. Westgates Resorts,

Ltd, No. 616CV217ORL41TBS, 2016 WL 11774203, at *3 (M.D. Fla. Aug. 4, 2016)(stating that under FDUTPA, "[w]hether particular conduct constitutes . . . an unfair or deceptive trade practice is a question of fact." (quoting Siever v. BWGaskets, Inc., 669 F. Supp. 2d 1286, 1293 (M.D. Fla. 2009))).

Sazerac's first argument is that consumers like Puig, who prefer and are familiar with the whisky beverage, "could not be misled into believing that they were purchasing distilled spirits at [non-liquor retailers] where such products are not sold," especially given the true label disclosures on the malt beverage. (Doc. #37, p. 10.) Essentially, Sazerac argues that the net impression caused could not have misled reasonable consumers. Despite Sazerac's arguments to the contrary, the Court largely agrees with another district court who rejected the same arguments as to the same beverages:

> First, taken as true, the complaint sufficiently alleges that Sazerac's label and packaging are affirmatively misleading. The label for Fireball Malt is substantially the same as the label for Fireball Whisky; both include . . . Sazerac's fire-breathing dragon logo, the words "RED HOT," the same color scheme, burnt edge, font and labeling, and the words "CINNAMON."
>
> . . .
>
> Likewise, here, a number of features of the Whisky Malt packaging could affirmatively mislead consumers: for instance, as described above: insinuating that Fireball Malt was as strong as Fireball Whisky by packaging it in a "shot" size, [and] deceptively labeling Fireball Malt and Fireball Whisky with nearly identical packaging . . . .

> A reasonable [Florida] consumer could nonetheless believe that he was buying Fireball Whisky [at a non-liquor retailer]. For instance, he could well be unaware of which establishments hold which liquor license types. He may not know that a gas station store can sell malt but not whisky. This is especially so if he is making a quick roadside purchase. He might also assume that the store is not complying with the terms of its liquor license.

McKay v. Sazerac Co., Inc., No. 23-CV-00522-EMC, 2023 WL 3549515, at *6 (N.D. Cal. May 17, 2023).

Sazerac's contention that no reasonable Florida consumer could be misled to believe the malt beverage is the whisky beverage is undercut by the highlighted social media comments in the SAC from purported consumers who seemingly confuse the beverages even at non-liquor retailers. (See Doc. #33, ¶¶ 40-46.) It's argument regarding the label disclosures fails to move the needle because technically or literally true statements can still be misleading. See CubeSmart, 328 F. Supp. 3d at 1361. The Court cannot conclude in this motion to dismiss that no reasonable Florida consumer could be deceived by Sazerac's alleged practices, especially given that whether an act or practice is deceptive is generally a question of fact. Prates, No. 616CV217ORL41TBS, 2016 WL 11774203, at *3.

## B. That miniature bottles are associated with distilled spirits is sufficiently supported

The SAC alleges the malt beverage's miniature bottle is deceptive because it is similar to the bottle size of the whisky beverage and because consumers expect miniature bottles to be "more

potent" and contain "higher alcohol content." (Doc. #33, ¶¶ 117-18.) Sazerac's second argument targets the latter allegation; it contends that the SAC's allegation that "miniature bottles . . . are associated with distilled spirts" is an unsupported conclusion. (Doc. #37, p. 14.) Puig responds that the conclusion is sufficiently supported, and the Court agrees.

The SAC cites the National Institute on Alcohol Abuse and Alcoholism (NIAAA) which states "one U.S. standard drink" of "distilled spirits" like "whiskey" is "1.5 fl[uid] o[unces]." (Doc. #33, ¶ 32.) The SAC further states that the "[m]iniature bottles[,] . . . also known as a 'shot' or 'shooters' to drinkers," (id. at ¶ 29), "fits" the 1.5 ounces "perfectly with a little room to spare." (Id. at ¶ 30-31.) Sazerac's argument regarding the pertinency or weight, if any, of the NIAAA's statement is best left for a later date. For now, Sazerac has been given "fair notice of what the . . . claim is and the grounds upon which it rests." Erickson, 551 U.S. at 93 (quoting Twombly, 550 U.S. at 555). Since that is all that is required, the SAC's allegations are sufficient and Sazerac's argument to contrary are unpersuasive.

### C. The SAC's failure to specifically allege that Puig saw and relied upon the non-liquor retailor displays is not fatal to claim

Sazerac's third argument is that the allegedly deceptive non-liquor retailor displays do not help Puig establish plausibility because the SAC does not allege that he even encountered them, let

alone that his purchasing decisions were based thereon.[2] (Doc. #37, p. 15-16.) The argument fails for two reasons.

First, as Puig points out, "the issue [in FDUTPA claims] is not whether the plaintiff actually relied on the alleged practice, but whether the practice was likely to deceive a consumer acting reasonably in the same circumstances." State, Off. of Atty. Gen., Dep't of Legal Affs. v. Wyndham Int'l, Inc., 869 So. 2d 592, 598 (Fla. 1st DCA 2004)(citing Davis v. Powertel, Inc., 776 So.2d 971, 974 (Fla. 1st DCA 2000)). So, "a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue." Id.; see also Carriuolo, 823 F.3d at 985. Sazerac's argument fails because a FDUTPA claim need not allege a consumer encountered or viewed the alleged misrepresentations. See Lewis v. Mercedes-Benz USA, LLC, 530 F. Supp. 3d 1183, 1234 (S.D.

---

[2] Sazerac's Reply (Doc. #41, p. 5) improperly raises for the first time the issues of causation and standing. See Herring v. Secretary, Dep't of Corrs., 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotes omitted). This is especially true here, where Puig, "[t]he party invoking federal jurisdiction[,] bears the burden of establishing the[] elements" of standing, Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992), but is deprived of such an opportunity because Sazerac raises the issue at the closing of briefing. Nonetheless, since the issue of standing "may be raised at any time," Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 434 (2011), Sazerac is "free to properly raise Article III standing arguments at a later date, at which time [Puig] will have an opportunity to respond." Miller v. Hamm, 640 F. Supp. 3d 1220, 1245 (M.D. Ala. 2022).

Fla. 2021)(denying argument that plaintiff must have "allege[d] they viewed any specific advertisements" on the same grounds).

Second, under the liberal federal pleading standards, "the pleading party is not required to 'allege a specific fact to cover every element or allege with precision each element of a claim[;] it is [just] necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Frazile v. EMC Mortg. Corp., 382 F. App'x 833, 836 (11th Cir. 2010)(quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).[3] The SAC alleges that Puig observed the malt beverages at non-liquor retailers and that those retailors displayed the malt beverages a certain way. Even if the FDUTPA claim required Puig to have actually encountered the displays, it can be inferred that he did so. Sazerac's argument is unpersuasive.

**D. The SAC's cited social media posts support the SAC's allegations**

Sazerac's last argument objecting to the SAC's incorporated social media commentary fares no better. The SAC does not entirely rely on the social media posts, as Sazerac suggests. (See Doc. #37, p. 17)("Sazerac notes that if all it takes to establish a

---

[3] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." Bonilla v. Baker Concrete Const., Inc., 487 F.3d 1340, 1345 n.7 (11th Cir. 2007).

plausible FDUTPA claim is citation to a few social media posts and comments, the courts will be flooded with undismissable [sic] claims . . . .). Of the SAC's one hundred forty-six paragraphs, the social media posts constitute fifteen paragraphs. (See Doc. #33, ¶¶ 38-49, 51-53.) The FDUTPA claim's plausibility is carried not by the social media posts but by factual allegations, as discussed above, that allow the Court to draw the reasonable inference that Sazerac is liable for the misconduct alleged. See supra Section III.A.

Nevertheless, the social media comments do serve to support Puig's allegations because they purportedly show Florida consumers confusing the malt beverage for the whisky beverage. (See Doc. #33, ¶ 40-46)(showing Florida resident Holly Brooke posting a TikTok video of the malt beverage and asking "[c]an someone please explain HOW TF they are selling liquor at a gas station in Florida?" and other social media users commenting that some gas stations sell liquor, not realizing the malt beverage was not liquor at all). These social media posts and others cited by the SAC do not need to explicitly state they are being deceived. They show a multitude of social media users confused and believing the malt beverage is liquor, and thus supporting Puig's allegation that reasonable consumers could be misled by the malt beverage. Sazerac's argument is unpersuasive.

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion to Dismiss (Doc. #37) is **DENIED.**

2. Defendant's Motion to Dismiss (Doc. #35) is **DENIED as moot.**

**DONE AND ORDERED** at Fort Myers, Florida, this ___12th___ day of September, 2024.


_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE


Copies:
Parties of record

15